# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| LAURA S.,                             )<br>                                             )<br>    Plaintiff,                        )<br>                                             )<br>    v.                                  )   2:18-cv-00375-JDL<br>                                             )<br>SOCIAL SECURITY ADMINISTRATION )<br>COMMISSIONER,                 )<br>                                             )<br>    Defendant.                     ) | |

## ORDER

Laura S. appeals from a decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her Social Security disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C.A. § 405(g) (West 2019). This appeal raises two issues: (1) whether the administrative law judge ("ALJ") erred by failing to recognize Laura S.'s back and visual conditions as severe impairments, and (2) whether the ALJ's mental residual functional capacity ("RFC") determination was unsupported by substantial evidence because he relied on his own lay opinion instead of the medical opinion evidence. Because I conclude that the ALJ's RFC determination was not supported by substantial evidence, I vacate the administrative decision and remand the matter for further proceedings.

## I. ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the March 27, 2018, decision of the ALJ. *See* ECF No. 9-2 at 19-30. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. § 404.1520 (West 2019). The claimant carries the burden of production on the first

four steps, and the burden shifts to the Commissioner at Step 5. *Purdy v. Berryhill*, 887 F.3d 7, 9-10 (1st Cir. 2018). The five-steps proceed as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted[.]

*Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). If the impairment does not meet a listed impairment at Step 3, the ALJ must, as an interim step, determine the claimant's "residual functional capacity," § 404.1520(a)(4), (e), which is the most a claimant can still do despite their limitations. § 416.945(a)(1). The RFC is used to assess Step 4 and Step 5:

> 4) [I]f the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5. Put differently, the steps ask (1) was the claimant working during the period of disability, (2) did they have a severe impairment during that period, (3) did the impairment impose limitations that the Social Security Administration deems disabling, (4) if not, could the claimant still do their past jobs given their maximum capacity to engage in mental and physical work, and (5) were there any jobs the claimant could perform?

At Step 1, the ALJ found that Laura S. had not engaged in substantial gainful activity beginning in January 2017. ECF No. 9-2 at 22. At Step 2, the ALJ found that Laura S.'s affective disorder, personality disorder, and anxiety-related disorder constituted severe impairments, but that other issues, such as her back and vision

2

problems, did not. *Id.* at 22-24. At Step 3, the ALJ found that Laura S.'s impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24-25. The ALJ was therefore required to make a determination of Laura S.'s RFC, and he found that she had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [S]he is limited to performing simple tasks in a non-fast-paced type work setting (no assembly line work), involving no interaction with the public as part of the job duties and only occasional interaction with supervisors and co-workers with no team, tandem and/or collaborative work. She is limited to simple work-related decisions and adapting to simple changes in routine work setting.

*Id.* at 26. Based on that RFC, the ALJ found at Step 4 that Laura S. was unable to perform any past relevant work. *Id.* at 29. At Step 5, however, he found that there were jobs that exist in significant numbers in the national economy that she could perform. *Id.* at 29-30. The ALJ therefore concluded that Laura S. was not disabled during the alleged period of disability, and denied her disability insurance benefits. *Id.* at 30.

## II. STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Applebee v. Berryhill*, 744 Fed. Appx. 6 (1st Cir. 2018) (per curiam);

3

*see also Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (internal citation omitted).

## III. ANALYSIS

Laura S. alleges that the ALJ made two errors: (1) he failed to recognize her back and visual impairments as severe at Step 2; and (2) the mental RFC assessment made before Step 4 was not supported by substantial evidence because he substituted his own lay assessment in place of medical opinion evidence. I consider each issue in order.

**1. Severe Impairments**

At Step 2 of the sequential evaluation process, a claimant must demonstrate that he or she has impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii), (c); § 416.909. The Step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed to screen groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). Nonetheless, objective medical evidence is required to support a finding of a severe impairment. *See* § 404.1521.

**A. Back Condition**

The ALJ found that Laura S.'s medical treatment notes support that her back condition is a non-severe physical impairment. Laura S. argues that her testimony,

coupled with the 2017 consultative examination by Dr. Frank Graf, M.D., supports a finding that her back condition constitutes a severe impairment.

As a preliminary matter, Laura S.'s testimony regarding her back pain was insufficient to support a finding of a severe impairment. *See Jackson v. Social Sec. Admin. Com'r*, No. 1:09-cv-00596-JAW, 2010 WL 3852863, at *3 (D. Me. Sep. 24, 2010), *R. & R. adopted*, 2010 WL 4320472 (D. Me. Oct. 26, 2010) ("Neither the plaintiff's testimony, nor entries he may have made on forms reporting his symptoms, is medical evidence, and medical evidence is necessary to support a finding of a severe impairment."). Furthermore, there was substantial countervailing evidence supporting the ALJ's determination that Laura S. does not have a severe back impairment. Dr. Sharon Hogan, a State agency physician, assessed no exertional limitations in February 2016, noting that Laura S. "[h]as chronic LBP [lower back pain] for which she takes opioids. Neurological exam normal. No imaging studies of spine." ECF No. 9-3 at 8. In August 2016, Dr. Jose Rabelo, a second State agency physician, concurred with Dr. Hogan and endorsed that Laura S. has non-severe conditions which are not associated with functional limitations. *Id.* at 20.

The ALJ gave both Dr. Hogan and Dr. Rabelo's opinions "considerable" weight. ECF No. 9-2 at 23. In contrast, the ALJ gave Dr. Graf's opinion "little" weight, concluding that his findings were "generally not consistent with other post-alleged onset date medical evidence." *Id.* at 23-24.

"[T]he existence of inconclusive or conflicting evidence at Step 2 does not require a finding that a claimant has a severe impairment or impairments. It is the ALJ's job to resolve evidentiary conflicts." *Kenyetta Day v. Berryhill*, No. 1:16-cv-

00593-JAW, 2017 WL 5037454, at *3 (D. Me. Nov. 2, 2017). I find that the ALJ's determination that Laura S. does not have a severe back impairment was supported by the opinions of Dr. Hogan and Dr. Rabelo, which the ALJ properly weighed against the opinion of Dr. Graf. Notably, nothing in Dr. Graf's opinion suggests a finding of degeneration which would call the earlier opinions of Dr. Hogan and Dr. Rabelo into question. The ALJ's assessment is not unreasonable on this record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

### B. Visual Impairment

Laura S. contends that Dr. Graf's opinion supports a finding that she has a severe visual impairment. Dr. Graf noted that Laura S. had a "prominent" difference in pupil sizes, that the right pupil was dilated and did not react to light, and that there was a "ratcheting type of extraocular eye motion." ECF No. 9-8 at 49. He also opined that she had unspecified visual limitations. *Id.* at 53. Again, however, I find that Dr. Graf's opinion conflicts with substantial evidence in the record. Laura S. underwent surgery in September 2015 to remove a pituitary tumor, which had caused her headaches and visual issues. ECF No. 9-2 at 23. Substantial evidence supports the finding that the surgery resolved her symptoms. Post-surgery, Laura S. reported improvement in her vision. ECF No. 9-7 at 54. In February 2016, Dr. Hogan noted that the tumor removal was "successful," and that Laura S. had "[n]o visual field deficits." ECF No. 9-3 at 8. A June 2017 neurologic exam noted no eye abnormalities. ECF No. 9-8 at 31. Considering this evidence, it was not unreasonable for the ALJ to

6

discount the opinion of Dr. Graf, an orthopedic surgeon, which constitutes the only objective evidence in support of a visual impairment.

**2.   Mental RFC**

Laura S. argues that the ALJ's mental RFC assessment made before Step 4 was not supported by substantial evidence because the limitations that he imposed were based on his own lay assessment of the medical records.

The challenge to the ALJ's mental RFC assessment arises from the discrepancy between the limitations assessed by a State agency consultant and additional limitations that were imposed by the ALJ.  Dr. David Houston, a State agency consultant, found that Laura S. has affective and anxiety-related disorder but not bipolar disorder.  ECF No. 9-3 at 7.  Dr. Houston therefore assessed mild limitations in Laura S.'s activities of daily living and moderate limitations in social functioning and concentration, persistence, and pace.  *Id.*  The ALJ afforded Dr. Houston's opinion "considerable" weight, and adopted all of the limitations Dr. Houston identified, but explained that he was assessing additional limitations in light of later-submitted evidence:

> Post assessment medical evidence is sufficient to support [that Laura S.] has severe mental impairment and the [RFC] reflects limitation in support of addressing potential symptom exacerbation in the conte[x]t of a full time work setting and in consideration of treatment notes from Willow Briggs, treating mental health counselor.

ECF No. 9-2 at 28.

The later-submitted evidence reflects that in June 2017, Laura S. was treated in the emergency room for suicidal ideation, and thereafter voluntarily underwent five days of inpatient psychiatric treatment.  ECF No. 9-7 at 157-60, 188-94, 439-44.

7

Willow Briggs, a licensed clinical counselor who counseled Laura S. after her hospitalization, assessed extreme limitations responding to requests, suggestions, criticism, correction, and challenges and marked limitations using reason and judgment to make work-related decisions. ECF No. 9-8 at 45. The ALJ gave her opinion "partial" weight. ECF No. 9-2 at 28. Based on the later-submitted evidence, the ALJ assessed additional limitations to those imposed by Dr. Houston: (1) no fast-paced type work setting (*i.e.*, no assembly line work); (2) no interaction with the public; and (3) only occasional interaction with coworkers and supervisors, and no team, tandem, or collaborative work. ECF No. 9-2 at 26. Laura S. contends that these additional limitations are not supported by any medical opinion but rather by the ALJ's impermissible interpretation of the medical record.

Because "bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam); *see also Staples v. Astrue*, No. 09-440-P-S, 2010 WL 2680527, at *5 (D. Me. June 29, 2010) ("[A]n administrative law judge, as a layperson, is not qualified to assess RFC based on raw medical evidence, except to the extent that commonsense judgments regarding RFC can be made."), *aff'd*, No. 09-440-P-S, 2010 WL 2854439 (D. Me. July 19, 2010). The Commissioner concedes that no medical opinion in the record directly supports the ALJ's additional limitations. ECF No. 15 at 12. Nonetheless, the Commissioner argues that because the ALJ's RFC assessment was more favorable to Laura S. than the evidence would otherwise support, she is not entitled to remand notwithstanding the lack of direct

opinion support. *See, e.g.*, *Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015) (claimant may not obtain remand based on RFC more favorable to him or her than evidence would otherwise support).

As a preliminary matter, this is not a case where an ALJ expressly gave the claimant the "benefit of the doubt." *See MacFarlane v. Astrue*, No. 07-132-P-H, 2008 WL 660225, at *4 (D. Me. Mar. 5, 2008) (finding limitations unsupported by medical evidence to be harmless error where they were obviously more favorable to the claimant than the record supported and the ALJ told the claimant he was giving him the "benefit of doubt"). Rather, this case resembles *Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017), *R. & R. adopted*, 2017 WL 1194182 (D. Me. Mar. 30, 2017), where the ALJ gave little weight to both State agency psychologists in light of later-submitted evidence. *Id.* at *3. The court ruled that "instead of assessing a mental RFC that gave the plaintiff 'the benefit of the doubt' or otherwise was more favorable than the remaining evidence would support, the administrative law judge . . . assessed an RFC unsupported by substantial evidence." *Staples*, 2017 WL 1011426, at *5.

The Commissioner attempts to distinguish *Staples*, arguing that in that case the ALJ disavowed reliance on both State agency consultants, whereas here the ALJ still relied, in part, on Dr. Houston's assessment. In support of this argument, the Commissioner cites to *Davis*, where the court denied a similar objection to a mental RFC because the ALJ, as here, did not completely reject the opinions of the State agency consultants and instead based her RFC on her own analysis. 2015 WL 3937423, at *2-5. However, *Staples* itself persuasively distinguishes *Davis*, noting

9

that in *Davis*, "the [ALJ] did not indicate that agency nonexamining consultants' RFC opinions had been called into question by later-submitted evidence." 2017 WL 1011426, at *4. Here, the ALJ did just that, concluding that later-submitted evidence showed that Laura S. has a severe mental impairment where Dr. Houston assessed her as only mildly or moderately limited. ECF No. 9-2 at 28. The ALJ's decision therefore implicitly calls Dr. Houston's opinion into question.

Having determined that Laura S. is more severely impaired than Dr. Houston's opinion indicated, the ALJ was "obliged to make an RFC determination[] rooted in substantial evidence of record." *Astrue*, 2010 WL 2680527, at *6. And although the ALJ indicates that his RFC limitations were made "in consideration of treatment notes from Willow Briggs," ECF No. 9-2 at 28, those limitations do not match those assessed by Briggs and the ALJ does not provide a reasoned explanation for them. Moreover, as already discussed, the Commissioner concedes that the ALJ's additional limitations are not directly traceable to any medical opinion in the record. "Reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result via an acceptable analytical pathway[.]" *Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018); *see also Kristal L. v. Berryhill*, No. 2:18-cv-00084-JAW, 2019 WL 495583, at *5 (D. Me. Feb. 8, 2019), *R. & R. adopted*, 2019 WL 1051999 (D. Me. Mar. 5, 2019) (remanding where ALJ assessed additional severe impairments to those assessed by State agency consultant but "[a]bsent some reasoned explanation, [the ALJ's] mental RFC finding cannot be discerned to be supported by substantial evidence.").

However, the Commissioner further defends the ALJ's additional limitations as supported by Laura S.'s own statements because "[i]t is not error to assess restrictions more favorable to a claimant than those set forth by medical experts on the basis of the adoption of a claimant's own testimony." *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *8 (D. Me. Sept. 22, 2017), *R. & R. adopted*, 2018 WL 1518843 (D. Me. Mar. 28, 2018). It is true that the ALJ's decision cites statements by Laura S. that arguably support the additional limitations the ALJ imposed. *See* ECF No. 9-2 at 24-26. However, nowhere in his decision does the ALJ explain how Laura S.'s testimony and statements translate into the assessed limitations. *See Astrue*, 2010 WL 2680527, at *3-4 (ruling that the argument that ALJ permissibly assessed the plaintiff's mental RFC by crediting his subjective allegations "might have proved persuasive had the [ALJ] clarified how she derived the specific components of her RFC from [that] source[]"). The Commissioner's attribution of the ALJ's additional limitations to Laura S.'s own testimony is therefore more a *post hoc* rationalization than a reasoned explanation in the decision itself.

In the absence of either a supporting medical opinion or a more detailed explanation, I conclude that the mental RFC that the ALJ assessed is unsupported by substantial evidence and that remand is warranted for that reason.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Commissioner's administrative decision is **VACATED** and the case is **REMANDED** for further proceedings consistent with this decision.

11

**SO ORDERED.**

**Dated this 27th day of August, 2019.**

                                                                **/s/ JON D. LEVY**
                                                 **CHIEF U.S. DISTRICT JUDGE**